UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JORGE ANTONIO LOPEZ ALVARADO,

                Plaintiff,

v.

UNKNOWN PARTY et al.,

                Defendants.

_____/

Case No. 1:25-cv-124

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LRF correctional and medical staff in their individual and official capacities: Unknown Party named as the Warden's Administrative Assistant, Nurse Unknown Karnitz, Prison Counselor Unknown Hoffman, Nurse Practitioner Unknown Keyes, Corrections Officer Unknown Brown,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Warden Chris King, Corrections Officer Unknown Rodgers, Corrections Officer Unknown Stewart, Corrections Officer Unknown Okenwa, Sergeant Unknown Ross, Nurse Unknown Sportell, Corrections Officer Unknown Jones, and Corrections Officer Unknown Brush. (Compl., ECF No. 1, PageID.2–5.)

In Plaintiff's complaint, he states that on February 27, 2024, he "was taken offsite to have major face surgery," which "consisted of the shaving down of [Plaintiff's] jawbone to access and remove a plate and screws."[2] (*Id.*, PageID.6, 7.) Upon Plaintiff's return to LRF, he was placed in general population. (*Id.*, PageID.6.) "After one full day of pain and suffering, [Plaintiff] noticed a lack of response to [his] complaints and grievances, so [he] began documenting all incidents with dates, times, places, and names . . .," as detailed below. (*Id.*)

On February 29, 2024, at 15:25,[3] Plaintiff went "to healthcare for [an] ice refill" and was "denied ice and medication again." (*Id.*, PageID.7.) Plaintiff "spoke with [Defendant] Officer Brown in [the] healthcare lobby." (*Id.*) Later that same day, at 19:00, Plaintiff "went to healthcare [and] spoke with [Defendant] Officer Rodgers and healthcare personnel[;] they informed [Plaintiff] they could not retrieve [his] discharge papers from when he returned from major face surgery on 2-27." (*Id.*)

On March 1, 2024, at 07:30, Plaintiff "entered healthcare for [an] ice detail [and] was attended by [Defendant] Officer Brown." (*Id.*) Defendant Brown tried "to make contact with [the] food tech. due to no ice in healthcare." (*Id.*) Defendant Nurse Karnitz brought "less than ¼ bag of cream colored ice." (*Id.*) Plaintiff claims that he attempted to speak with Defendant Karnitz about

---

[2] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

[3] In Plaintiff's complaint, he reports time using military time, and the Court retains this format in this opinion.

"[Plaintiff's] ongoing situation," and Karnitz walked away, saying: "we don't take house calls." (*Id.*) Plaintiff states that he held up the bag of ice "to the camera in [the] healthcare lobby to be recorded clearly." (*Id.*) A few hours later, at 11:35, Plaintiff "went to healthcare" and was "denied medication again." (*Id.*) Plaintiff "received ice from healthcare person [Defendant] Karnitz." (*Id.*) At 13:30, Plaintiff had a non-party officer "call healthcare and ask about [Plaintiff's] prescriptions" because Plaintiff was "in major pain." (*Id.*) Plaintiff reports: "no meds, [and] was also not allowed to go to healthcare to be checked out in person." (*Id.*) At 14:07, Defendant Officer Stewart contacted healthcare on Plaintiff's behalf due to "[Plaintiff's] extreme pain." (*Id.*) "Healthcare relayed to continue on Tylenol and ice." (*Id.*) At 16:12, Plaintiff had a non-party officer contact healthcare again; "healthcare still had no medication for [Plaintiff]." (*Id.*, PageID.8.) At 16:50, Plaintiff talked to a non-party officer about his "ongoing situation," and the non-party officer told Plaintiff "there was nothing he could do and suggested that [Plaintiff] stop a superior officer at chow time." (*Id.*) At 17:56, Plaintiff went to healthcare for his "ice detail," and Plaintiff asked about his "ongoing situation." (*Id.*) Plaintiff claims that at some unspecified time while he was in the healthcare unit, he "was threatened to be taken to seg[regation] by yard officers by [Defendant] Okenwa," so Plaintiff left healthcare. (*Id.* (phrasing in original retained).) At 18:08, Plaintiff talked to Defendant Officer Ross, and Ross "assured [Plaintiff] he would contact a nurse." (*Id.*) At 18:57, Plaintiff spoke with Defendant Officer Jones, and she "called healthcare, and they told her there was nothing they could do for [Plaintiff]." (*Id.*) At 23:45, Plaintiff "reported extreme pain to [Defendant] Officer Jones," and Jones "made contact with someone via telephone who did bring [Plaintiff] ice." (*Id.*)

The next day, March 2, 2024, at 02:45, Plaintiff "woke up with extreme pain and swelling in [his] jaw." (*Id.*) Plaintiff asked Defendant Jones to contact healthcare and "tell them [Plaintiff]

need[ed] to go back to the hospital because [of his] pain." (*Id.*) "No healthcare staff [was] available," and Plaintiff "was instructed to report at a later time." (*Id.*) At 06:23, Plaintiff "reported extreme pain to [Defendant] Officer Stewart and asked [Stewart] to call healthcare." (*Id.*, PageID.9.) Defendant Stewart "refused to make the phone call and instructed [Plaintiff] to search for a superior officer at chow time." (*Id.*) When Plaintiff "insisted," Defendant Stewart stated: "I ain't putting my ass on the line for not one of you mothaf[***]a." (*Id.*) At 07:20, Plaintiff "spoke with very helpful nursing staff about [his] ongoing situation," and "they explained they ha[d] been aware of [his] ongoing situation but that the prison dental professional decided to go against the oral surgeon's direct instruction to prescribe [Plaintiff] with antibiotics, pain med[ication]s, and mouthwash." (*Id.*) The "nursing team" told Plaintiff that they would contact the "emergency room staff at Duane Waters prison hospital for further instructions." (*Id.*) Plaintiff did not hear anything further from them. (*Id.*) Thereafter, at 12:45, Plaintiff was "denied ice by [Defendant] Officer Brown." (*Id.*) Plaintiff claims that his ice detail was not due to expire until the following day. (*Id.*)

On March 3, 2024, Plaintiff was in "so much pain that [he] did not eat, shower, or leave [his] cell." (*Id.*)

On March 4, 2024, at 07:01, Plaintiff was "denied ibuprofen when [he] asked to speak to nursing staff about extending [his] ice detail." (*Id.*, PageID.10.) Plaintiff claims that he was "kicked out of healthcare by [Defendant] Officer Brown." (*Id.*) At 10:00, Plaintiff "explained [the] ongoing situation" to Defendant Prison Counselor Hoffman. (*Id.*) Defendant Hoffman initially instructed Plaintiff "to fill out a healthcare request form," but after Plaintiff "insisted urgency due to [his] extreme pain," Hoffman told Plaintiff that "he would call healthcare after his daily round." (*Id.*)

On March 5, 2024, at 08:00, Plaintiff "complained about major pain," and "[Defendant] Officer Brush called healthcare and put Plaintiff on the phone with healthcare." (*Id.*) While

Plaintiff was on the phone, "[Defendant] Officer Okenwa snatched the phone out of [Plaintiff's] hand and yanked out the telephone wire." (*Id.*) At 08:45, upon Plaintiff's request, a non-party officer called healthcare, and "they told her there was nothing they could do for [Plaintiff]" and if he wanted "to be treated for further symptoms, [he] need[ed] to fill out a medical request form." (*Id.*) Plaintiff completed this form and "turned it in immediately." (*Id.*)

On March 6, 2024, at 08:45, Plaintiff completed another healthcare request form, and he submitted it to Defendant Hoffman. (*Id.*, PageID.11.) Defendant Hoffman told Plaintiff that Hoffman had "just turned one in for [Plaintiff] yesterday," and Plaintiff "explained to him that [Plaintiff] still [had] not received medical treatment or seen anyone except nurses who claim they can do nothing for [Plaintiff], so [Hoffman] agreed to turn in the healthcare request form." (*Id.*) At 09:00, Defendant Warden's Administrative Assistant "came and asked about [Plaintiff's] situation because he received a phone call from [Plaintiff's] father." (*Id.*) At 13:12, Plaintiff "received amoxicillin" to be taken "twice daily for 10 days." (*Id.*) Plaintiff states that he "still [had] no pain medication or oral rinse, both of which were prescribed on 2-27 by [the outside surgeon]." (*Id.*)

On March 7, 2024, at 12:15, Plaintiff "went to med[icine] lines expecting pain medication since [his] antibiotics [had] come in yesterday," but "no pain med[ication]s [were] received." (*Id.*) At 13:00, Plaintiff had an appointment with "[Defendant] Nurse Practitioner Keyes," and Keyes advised that "the last three pages" of Plaintiff's discharge papers were not received when they were faxed to LRF. (*Id.*) Defendant Keyes told Plaintiff that "when she noticed [his] discharge paperwork was incomplete, she immediately called and got it fixed." (*Id.*) At 22:45, Plaintiff "asked [Defendant] Officer Jones to call for [Plaintiff's] ice detail." (*Id.*, PageID.12.) Plaintiff claims that "[Defendant] healthcare worker Sportell denied [Plaintiff] ice." (*Id.*)

On March 8, 2024, Plaintiff states that he was "denied ice by [Defendant] Officer Brown in healthcare." (*Id.*) Thereafter, during the evening medicine line, Plaintiff "received oxy for pain because [his] prescription was finally filled." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment to the United States Constitution and under state law.[4] (*See id.*, PageID.6, 13.) As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.13.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[4] In Plaintiff's complaint, he specifically references "cruel and unusual punishment" and "deliberate indifference," both of which imply that Plaintiff is bringing § 1983 claims under the Eighth Amendment. (Compl., ECF No. 1, PageID.6, 13.) In light of Plaintiff's specific reference to Eighth Amendment claims, the Court does not construe Plaintiff's complaint to raise any other § 1983 claims.

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2–5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

### 1.    Defendants Employed by the MDOC

As to any Defendants employed by the MDOC, Plaintiff's official capacity claims against these Defendants are equivalent to claims against the MDOC.

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment

immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.13.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617). Therefore, Plaintiff may not seek monetary damages against any Defendants employed by the MDOC in their official capacities.

Accordingly, Plaintiff has failed to state a claim against any Defendants employed by the MDOC in their official capacities upon which relief can be granted, and his official capacity claims against any Defendants employed by the MDOC will be dismissed for failure to state a claim.

### 2. Defendants Employed by a Prison Medical Provider that Contracts With the State

With respect to any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates, Plaintiff's official capacity claims are equivalent to a suit against the private entity. A private entity that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*,

102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff fails to allege the existence of a custom or policy of the private entity, let alone that any policy or custom was the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th

11

Cir. Feb. 2, 1987). Furthermore, even liberally construing Plaintiff's complaint, as the Court is required to do, even if Plaintiff intended to suggest the existence of a custom, his allegations are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Accordingly, because Plaintiff fails to allege the existence of a policy or custom of the private entity, Plaintiff's official capacity claims against any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates will be dismissed.

### B.    Defendant King

As to Defendant King, the Warden at LRF, Plaintiff fails to allege sufficient facts showing how Defendant King was personally involved in the violation of Plaintiff's constitutional rights. (*See generally* Compl., ECF No. 1.) Specifically, Plaintiff lists Warden King as a Defendant; however, Plaintiff fails to name Defendant King when setting forth his factual allegations. (*See generally id.*)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). And, Plaintiff's claims against Defendant King

fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Furthermore, to the extent that Plaintiff seeks to hold Defendant King liable due to his supervisory position, government officials, such as Defendant King, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant King encouraged or condoned the conduct of King's subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Because Plaintiff has failed to allege that Defendant King engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against him.

### C.    Eighth Amendment Claims

Plaintiff claims that Defendants violated his Eighth Amendment rights by denying or delaying his receipt of medical care following his face surgery. (*See generally* Compl., ECF No. 1.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical

14

attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Objective Component

Here, Plaintiff alleges that he had "major face surgery," which "consisted of . . . shaving down [Plaintiff's] jawbone to access and remove a plate and screws," and that following this surgery, he experienced major pain. (Compl., ECF No. 1, PageID.6, 7; *see id.*, PageID.7–12.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### 2.    Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—as explained below, with respect to all remaining Defendants, except Defendant Stewart, Plaintiff fails to show that these Defendants were deliberately indifferent to his serious medical needs.

As an initial matter, throughout Plaintiff's complaint, he faults "healthcare" and non-party officers and medical staff; however, this entity and these individuals are not identified as Defendants in either the case caption of the complaint or the section of the complaint where Plaintiff lists the Defendants in this suit. Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of

the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against non-party individuals or entities discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

Moreover, as to Plaintiff's references to "healthcare staff," "healthcare personnel" and "they," "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Here, Plaintiff's general references to "staff" or "they," are insufficient to show that any of the named Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. Accordingly, all intended claims against unspecified Defendants will be dismissed for failure to state a claim.

With respect to Plaintiff's allegations against specific named Defendants, many of Plaintiff's factual allegations show the opposite of deliberate indifference. Indeed, as detailed above, in response to Plaintiff's requests for medical care, the vast majority of the named Defendants (i.e., Warden's Administrative Assistant, Nurse Karnitz, Prison Counselor Hoffman, Nurse Practitioner Keyes, Corrections Officer Brown, Corrections Officer Rodgers, Corrections Officer Okenwa, Sergeant Ross, Nurse Sportell, Corrections Officer Jones, and Corrections Officer Brush) were responsive to Plaintiff's requests, or Plaintiff fails to allege that they engaged in any active unconstitutional action. *See supra* Part I (setting forth the factual allegations of the

complaint); (*see also* Compl., ECF No. 1, PageID.7–12.)[5] Further, it is clear that Plaintiff disagrees with the medical care provided by the medical staff; however, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that prisoners are not entitled to "unqualified access to health care" (citation omitted)).

Moreover, as explained below, the following allegations, which suggest that certain Defendants denied some of Plaintiff's requests, are insufficient to show that these Defendants acted with deliberate indifference. First, Plaintiff alleges that on March 1, 2024, at 07:30, Plaintiff "attempted to speak with" Defendant Karnitz "about [Plaintiff's] ongoing situation" after Karnitz brought ice to Plaintiff, and that Karnitz "walked away saying, 'we don't take house calls.'" (Compl., ECF No. 1, PageID.7.) A few hours later, at 11:35, Plaintiff went to healthcare and was "denied medication again"; however, Plaintiff states that he "received ice from healthcare person [Defendant] Karnitz." (*Id.*) As an initial matter, Plaintiff does not allege that Defendant Karnitz was involved in, or had any knowledge of, the denial of medication at 11:35 on March 1, 2025. And, with respect to Plaintiff's allegation that Defendant Karnitz walked away from Plaintiff after Karnitz gave Plaintiff ice, although Plaintiff alleges in a vague and conclusory manner that he "attempted to speak with" Defendant Karnitz "about [Plaintiff's] ongoing situation," Plaintiff does not allege any facts about what he told Karnitz. Under these circumstances, Plaintiff's vague and conclusory allegation about telling Karnitz about his "ongoing situation," without additional facts about what specifically he informed Karnitz, is insufficient to show that Karnitz knew about

---

[5] Plaintiff's factual allegations, as detailed above, contain minute-by-minute allegations over an approximately one-week period. *See supra* Part I. In light of this, the Court does not restate all of Plaintiff's factual allegations in the analysis section of this opinion.

Plaintiff's specific medical needs and disregarded them. Therefore, Plaintiff fails to state a deliberate indifference claim against Defendant Karnitz regarding this interaction.

Second, as to Plaintiff's allegation that on March 2, 2024, at 12:45, Plaintiff was "denied ice by [Defendant] Officer Brown," Plaintiff fails to allege sufficient facts to show that Defendant Brown, a correctional officer, knew that Plaintiff was supposed to receive ice at that time. (*Id.*, PageID.9.) Indeed, Plaintiff does not allege that he told Defendant Brown anything about his condition and his need for ice, alleging only that Defendant Brown denied him ice. (*See id.*) And, although Plaintiff claims that his ice detail was not due to expire until the following day, Plaintiff alleges no facts to suggest that Defendant Brown had any knowledge of Plaintiff's ice detail. (*See id.*) For example, Plaintiff does not allege that he showed Defendant Brown his written ice detail or that he even informed Defendant Brown that he had such a detail. Under these circumstances, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Third, as to Plaintiff's allegation that while Plaintiff was on the phone with healthcare on March 5, 2024, "[Defendant] Officer Okenwa snatched the phone out of [Plaintiff's] hand and yanked out the telephone wire," Plaintiff alleges no facts to suggest that Okenwa knew that Plaintiff was speaking with healthcare. (*Id.*, PageID.10.) Plaintiff equates Defendant Okenwa's actions with denying him healthcare, but without facts suggesting that Defendant Okenwa knew that Plaintiff was speaking with healthcare staff, Plaintiff fails to show that Okenwa knew of Plaintiff's medical needs and disregarded them. Again, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity, and ambiguity does not support a claim.

Fourth, with respect to Plaintiff's allegations that Defendants Okenwa and Brown, on separate occasions, asked Plaintiff to leave the healthcare unit, these allegations are also

insufficient to show deliberate indifference by Defendants. (*See id.*, PageID.8, 10.) Specifically, Plaintiff alleges that he went to the healthcare unit on March 1, 2024, at 17:56, to "inquire[] about [his] ongoing situation," and that at some unspecified point while Plaintiff was there, Defendant Officer Okenwa and other non-party "yard officers" "threatened to . . . take[] [Plaintiff] to seg[regation]." (*Id.*) Plaintiff states that he then "exited healthcare." (*Id.*) Then, on March 4, 2024, at 07:01, Plaintiff alleges that he was "kicked out of healthcare by [Defendant] Officer Brown." (*Id.*, PageID.10.) On both of these occasions, Plaintiff does not allege any facts to suggest that Defendants Okenwa and Brown, both of whom are correctional staff, had any knowledge of Plaintiff's medical needs on the dates in question. That is, Plaintiff simply alleges that these Defendants "kicked" him out of healthcare, but without additional facts about what these non-medical Defendants knew about Plaintiff's medical needs, he necessarily fails to show that these Defendants knew about Plaintiff's medical needs when they took these actions. Thus, Plaintiff fails to state Eighth Amendment deliberate indifference claims against Defendants Okenwa and Brown for these actions.

Finally, Plaintiff claims that on March 7, 2024, Defendant Sportell denied him ice, and that on March 8, 2024, he was "denied ice by [Defendant] Officer Brown in healthcare." (*Id.*, PageID.12.) Plaintiff reports that his ice detail was due to expire on March 3, 2024, and he states that he went to healthcare on March 4, 2024, to "speak to nursing staff about extending [his] ice detail" (*id.*, PageID.9, 10); however, Plaintiff alleges no facts to suggest that his ice detail was in fact extended by medical staff. Under the circumstances alleged in the complaint, Plaintiff fails to show Defendants Sportell and Brown acted with deliberate indifference when they denied Plaintiff ice because he does not allege that he in fact had an ice detail at the times in question or that he

informed Defendants Sportell and Brown about any symptoms that he believed required ice, regardless of whether he had an ice detail.

Therefore, for the reasons set forth above, Plaintiff fails to state Eighth Amendment deliberate indifference claims against Defendants Warden's Administrative Assistant, Nurse Karnitz, Prison Counselor Hoffman, Nurse Practitioner Keyes, Corrections Officer Brown, Corrections Officer Rodgers, Corrections Officer Okenwa, Sergeant Ross, Nurse Sportell, Corrections Officer Jones, and Corrections Officer Brush. However, as to Defendant Officer Stewart, at this stage of the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Stewart regarding Stewart's refusal to call healthcare on Plaintiff's behalf on March 2, 2024. Specifically, Plaintiff alleges that on March 2, 2024, at 06:23, Plaintiff "reported extreme pain to [Defendant] Officer Stewart and asked [Stewart] to call healthcare." (*Id.*, PageID.9.) Plaintiff claims that Defendant Stewart "refused to make the phone call and instructed [Plaintiff] to search for a superior officer at chow time," and when Plaintiff "insisted," Defendant Stewart stated: "I ain't putting my ass on the line for not one of you mothaf[***]a." (*Id.*) At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to Plaintiff. Therefore, although Plaintiff has by no means proven his Eighth Amendment claim against Defendant Stewart regarding this March 2, 2024, interaction, the Court will not dismiss this claim on initial review. However, any other intended Eighth Amendment claims against Defendant Stewart will be dismissed for failure to state a claim because in Plaintiff's other interaction with Stewart, Plaintiff alleges that Stewart, a non-medical correctional officer, was responsive to Plaintiff's requests for medical care. (*See id.*, PageID.6 (alleging that at on March 1, 2024, at 14:07, Defendant Officer Stewart contacted healthcare on Plaintiff's behalf due to "[Plaintiff's] extreme pain").)

### D.    State Law Claims

Plaintiff implies that in addition to his federal claims, he is bringing state law claims. (*See, e.g.*, Compl., ECF No. 1, PageID.13 (referencing "medical negligence").)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Warden's Administrative Assistant, Nurse Karnitz, Prison Counselor Hoffman, Nurse Practitioner Keyes, Corrections Officer Brown, Warden King, Corrections Officer Rodgers, Corrections Officer Okenwa, Sergeant Ross, Nurse Sportell, Corrections Officer Jones, and Corrections Officer Brush will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Because Plaintiff continues to have a pending federal claim against Defendant Stewart, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Stewart.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Warden's Administrative Assistant, Nurse Karnitz, Prison Counselor Hoffman, Nurse Practitioner Keyes, Corrections Officer Brown, Warden King, Corrections Officer Rodgers, Corrections Officer Okenwa, Sergeant Ross, Nurse Sportell, Corrections Officer Jones, and Corrections Officer Brush will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against these Defendants will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, all of Plaintiff's federal claims against remaining Defendant Stewart *except for* Plaintiff's Eighth Amendment deliberate indifference claim regarding Defendant Stewart's refusal to call healthcare on Plaintiff's behalf on March 2, 2024. The following claims against Defendant Stewart remain in the case: individual capacity Eighth Amendment deliberate indifference claim regarding Defendant Stewart's refusal to call healthcare on Plaintiff's behalf on March 2, 2024; and state law claims.

An order consistent with this opinion will be entered.

Dated:  April 14, 2025                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge